**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael L. HITCHCOCK,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert B. GREENSLADE,**
**Defendant–Appellant.**

Nos. 91–10388, 91–10400.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1992.

Memorandum Filed Feb. 11, 1993.

Decided April 28, 1993.

Karen L. Snell, Asst. Federal Public Defender, San Francisco, CA, for defendants-appellants.

Susan B. Gray, Eric R. Havian, Asst. U.S. Attys., San Francisco, CA, for plaintiff-appellee.

Before FLETCHER, POOLE and T.G. NELSON, Circuit Judges.

### ORDER AND OPINION

#### ORDER

The government's request for publication is granted. The memorandum disposition filed February 11, 1993 is redesignated a per curiam opinion.

#### OPINION

PER CURIAM:

Hitchcock and Greenslade were separately charged with failure to file tax returns. The district court refused to appoint counsel without a showing of financial need. It also refused to prevent the prosecution from using the information they submitted to establish financial need. These interlocutory appeals followed. We dismiss the consolidated appeal for lack of jurisdiction and decline to grant in the alternative a writ of mandamus.

### I. FACTS

The defendants were separately charged with misdemeanor failure to file tax returns for years in the mid–1980's, in violation of 26 U.S.C. § 7203. Both defendants obtained continuances to retain counsel but failed to engage attorneys. Both expressed misgivings about documenting their financial need, as required by the Criminal Justice Act, 18 U.S.C. § 3006A, to obtain appointed counsel.

The magistrate appointed a single public defender to represent both defendants for the sole purpose of determining whether to submit the financial information or challenge its necessity. On July 2, 1991, the public defender moved for a general appointment of counsel, requesting permission to file the fi-

nancial information under seal. On July 25, 1991 the district judge denied the defendants' motions to seal any information submitted, denied "immunity" for the financial information and refused to appoint counsel without the information. Timely notices of appeal followed, and this court consolidated the appeals. Both cases have been continued pending outcome of these appeals.

## II. § 1291 JURISDICTION

■ Ordinarily, a party may appeal from a district court decision under 28 U.S.C. § 1291 only when the decision ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989). That clearly is not the case here; the defendants have not yet been tried.

■ The collateral-order doctrine, however, permits immediate appeal of decisions which (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) are effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978). The courts adhere especially strictly to these requirements in criminal cases. *Midland Asphalt,* 489 U.S. at 799, 109 S.Ct. at 1497–98. The defendants argue that this case meets all three requirements.

■ The parties appear to agree that the order meets the first *Coopers & Lybrand* condition, that the order conclusively determine the disputed question.

The order fails at least one of the other two conditions, however. The defendants argue that revealing the information requires them to forego their Fifth Amendment right not to incriminate themselves, but keeping it secret requires them to relinquish their Sixth Amendment right to appointed counsel. Even if they are correct that this Hobson's choice violates their rights, the collateral-order test is not satisfied. They are on the horns of a dilemma involving the second and third *Coopers & Lybrand* conditions.

■ If they do reveal the information and the prosecution uses it to their disadvantage, the purported Fifth Amendment violation will be reviewable for harmless error. *Arizona v. Fulminante,* —— U.S. ——, ———— ————, 111 S.Ct. 1246, 1263–66, 113 L.Ed.2d 302 (1991) (opinion of the Court as to this issue). A claim reviewable for harmless error fails the second *Coopers & Lybrand* condition. *See Midland Asphalt,* 489 U.S. at 799–800, 109 S.Ct. at 1497–99; *Flanagan v. United States,* 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984); *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1566 (11th Cir.1987).

■ If they do not reveal the information, are consequently denied counsel, are convicted and appeal, we will then decide whether the trial court erred in refusing to grant immunity. If it did, that error will have denied them the right to appointed counsel and will require reversal without regard to prejudice. *United States v. Cronic,* 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 2047 & n. 25, 80 L.Ed.2d 657 (1983); *United States v. Wadsworth,* 830 F.2d 1500, 1505 (9th Cir.1987). In that event, the claim is effectively reviewable after judgment and fails the third *Coopers & Lybrand* condition.

■ The defendants' answers to this analysis miss the mark. They argue that this horns-of-dilemma approach eviscerates the collateral-order doctrine by denying interlocutory appeal in all cases—in every case, the asserted error either requires prejudice or does not. This approach, however, is too well-entrenched in Supreme Court law to be ignored. *See, e.g., Midland Asphalt,* 489 U.S. at 799–800, 109 S.Ct. at 1497–99; *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 438–39, 105 S.Ct. 2757, 2764–65, 86 L.Ed.2d 340 (1985); *Flanagan,* 465 U.S. at 268–69, 104 S.Ct. at 1056–57. The defendants also argue that the rights at stake here are fundamental; this fact, however, does not confer jurisdiction if the collateral-order conditions are not satisfied.

■ More broadly, neither the Fifth nor the Sixth Amendment claim is the sort that the collateral-order doctrine was designed to protect. A right is eligible for collateral

review in a criminal case only if its " 'legal and practical value ... would be destroyed if it were not vindicated before trial.' " *Midland,* 489 U.S. at 799, 109 S.Ct. at 1497–98 (quoting *United States v. MacDonald,* 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)). That is not the case here. Unlike the cases in which the Supreme Court has allowed collateral criminal appeals, the rights at issue here would neither become moot upon conviction nor entitle the defendants not to be tried at all. At best they entitle the defendants *not to be convicted* in certain circumstances—either without an appointed lawyer or as a result of the defendants' incriminating submissions. *Cf. Flanagan,* 465 U.S. at 266–67, 104 S.Ct. at 1055–56. Reversal after trial, if it is warranted, will adequately protect this interest.

## III. MANDAMUS

In the alternative, Hitchcock and Greenslade ask us to treat their appeal as a petition for mandamus. Although we have the power to do so, *see Land v. Deeds,* 878 F.2d 318, 318 (9th Cir.1989), we decline to issue the writ.

 Five inquiries govern our decision whether to grant mandamus: 1) does the petitioner have another adequate means to attain relief; 2) will the petitioner be damaged in a way not correctable on appeal; 3) is the district court's order clearly erroneous as a matter of law; 4) is the error frequently made by the district courts; and 5) does the order raise new and important problems. *Allen v. Old Nat'l Bank (In re Allen),* 896 F.2d 416, 419–20 (9th Cir.1990). As the discussion of collateral-order jurisdiction makes clear, ordinary appeal will protect the asserted rights; the first and second guidelines point away from mandamus. As this is a case of first impression in the Ninth Circuit, the fourth guideline points away from mandamus. Finally, this issue, while new to the Ninth Circuit, is not so important to administration of the courts or to other litigants that the fifth guideline points toward mandamus.

 As to the third guideline, the district court did not clearly err as to the law. The Ninth Circuit has not decided the amount of protection such financial disclosures must receive. Other circuits agree that *some* sort of protection is necessary for the financial disclosures made to obtain appointed counsel. They do not, however, uniformly require the court to articulate the scope of protection before trial, shield the information from the prosecution, or prohibit all prosecutorial use of the information. *See, e.g., United States v. Sarsoun,* 834 F.2d 1358, 1363–64 (7th Cir. 1987); *United States v. Harris,* 707 F.2d 653, 662–63 (2d Cir.) (prohibiting use of information in prosecution's "direct" case), *cert. denied,* 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); *United States v. Peister,* 631 F.2d 658, 661–62 (10th Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). Moreover, the parties agree that *Simmons v. United States,* 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968), governs this case by analogy, and some courts have held that the government may use *Simmons* information for limited purposes. *See United States v. Salvucci,* 448 U.S. 83, 93–94 & nn. 8 & 9, 100 S.Ct. 2547, 2553–54 & nn. 8 & 9, 65 L.Ed.2d 619 (1980) (citing cases but not deciding the issue); *Porretto v. Stalder,* 834 F.2d 461, 466–67 n. 7 (5th Cir.1987). In short, the law requires protection but does not clearly determine the protection's timing or extent.

 The district court's order fell within these contours. It did not deny protection altogether. The court denied "immunity," but this term apparently referred to the defendants' broad request to seal the affidavits and prevent any government use of them at all; this broad protection was not clearly required. Moreover, it seems unlikely that the district court will fail to grant some protection; the parties apparently agree that the financial information is protected by *Simmons* and disagree only as to which, if any, governmental uses are permitted. With the law unsettled as to timing and extent of the protection, denying blanket use immunity was not *clearly* erroneous under the third guideline, and we express no opinion whether it was error at all.

We therefore deny the petition for mandamus.

## IV. CONCLUSION

We DISMISS the appeal for lack of jurisdiction and DENY the petition for mandamus.