**UNITED STATES of America, Plaintiff,**

v.

**John HICKEY and Mamie Tang, Defendants.**

**No. CR–97–0218 MMC (MEJ).**

United States District Court, N.D. California.

Feb. 26, 1998.

Robert K. Crowe, U.S. Attorney's Office, Criminal Div., San Francisco, CA, for U.S.

David J. Cohen, San Francisco, CA, for John A. Hickey.

William Weiner, William Weiner Law Offices, San Francisco, CA, for Mamie Tang.

ORDER DENYING THE GOVERNMENT'S MOTION TO UNSEAL DEFENDANTS' FINANCIAL AFFIDAVITS AND GRANTING THE GOVERNMENT'S MOTION FOR AN ORDER TO SHOW CAUSE WHY APPOINTMENT OF COUNSEL SHOULD NOT BE TERMINATED

JAMES, United States Magistrate Judge.

## INTRODUCTION

On July 16, 1997, the government filed an indictment charging Defendant Hickey and Defendant Tang ("Defendants") with securities fraud, mail fraud, and wire fraud. In October 1996, Defendants sought court appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A(b). After reviewing the Defendants' completed CJA 23 financial affidavits, Magistrate Judge Joan S. Brennan appointed counsel for Defendants. At Defendants request, Judge Brennan then sealed the financial affidavits.

On September 11, 1997, the government filed a motion to unseal the financial affidavits and a motion to show cause why counsel should not be terminated. Defendants oppose the government's motions based on their Fifth Amendment right against self-incrimination. Defendants claim that the information contained in the affidavits is privileged and may be incriminatory.

After careful consideration of the parties' papers and all other matters submitted, the Court hereby denies the government's motion to unseal the financial affidavits and hereby grants the order to show cause why counsel should not be terminated for the reasons set forth below.

## DISCUSSION

I. *Motion to Unseal Financial Affidavits*

The Fifth Amendment privilege against self-incrimination protects the accused from being incriminated by his or her own compelled testimonial communications. *Fisher v. United States,* 425 U.S. 391, 409, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The privilege can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory. *Kastigar v. United States,* 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). To claim the Fifth Amendment privilege against self incrimination the claimants must be confronted by "substantial and real," not merely "trifling or imaginary," hazards of incrimination. *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *see Simmons v. Argomaniz,* 925 F.2d 1349, 1353–54 (9th Cir.1991) (holding that where defendant

was being prosecuted for tax evasion, the hazards were substantial and real, not remote and speculative because the "production of [the financial] documents would establish two of the essential elements of the crime"); *see also Seattle Times v. United States District Court*, 845 F.2d 1513, 1520 (9th Cir. 1988) (holding that unsealing financial affidavits in a product tampering case would not result in real and appreciable hazards of self-incrimination).

Relying on *Seattle Times*, 845 F.2d at 1518–1519, and *United States v. Harris*, 707 F.2d 653, 662 (2d Cir.1983), the government argues that the Court should unseal Defendants' financial affidavits because the Fifth Amendment privilege against compelled self-incrimination does not justify sealing a defendant's financial affidavit.

In *Seattle Times*, the court found that unsealing the defendant's financial affidavits would not implicate the Fifth Amendment privilege. *Seattle Times*, 845 F.2d at 1518–19. The court stated:

[t]he district court's determination here was based on an assumption that unsealing the financial affidavits would tend to incriminate Nickell. This assumption is premature. We do not know what use, if any, the government will try to make of the information contained in the affidavits. Therefore, any fifth amendment problem is at this juncture speculative and prospective only.

*Id.* at 1519.

The Government also contends that the Court should follow the Second Circuit in *Harris*, 707 F.2d at 662. In *Harris*, the court refused to seal the defendant's financial affidavit or conduct the financial eligibility hearing *ex parte*. *Id.* The court stated that "our legal system is rooted in the idea that facts are best determined in adversary proceedings; secret, *ex parte* hearings are 'manifestly conceptually incompatible with our system of criminal jurisprudence.'" *Id.* (citations omitted).

Defendants argue that *Seattle Times* is inapplicable to this case. Defendants assert that the court in *Seattle Times* balanced the media's First Amendment right to the information contained in the defendant's financial affidavit against the defendant's Sixth Amendment right to a fair trial. Defendants argue that what is at issue in this case is Defendants' Fifth Amendment privilege against self-incrimination, not the First Amendment rights of the media.

The Court agrees with the government that *Seattle Times* sets forth the appropriate standard for analyzing whether the financial affidavits should remain under seal.[1] In *Seattle Times*, the court stated, "[t]o claim the [fifth amendment] privilege, the accused must be faced with substantial hazards of self-incrimination that are 'real and appreciable' and not merely 'imaginary and unsubstantial.'" *Id.* at 1518–19 (alteration in original) (quoting *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.1980)).

However, the Court distinguishes the facts of *Seattle Times* from this case. In *Seattle Times*, the defendant was charged with placing lethal doses of cyanide in Excedrin capsules. *Seattle Times*, 845 F.2d at 1514. The defendant's financial condition was irrelevant to the criminal charges. Thus, the defendant was not faced with real and appreciable hazards of self-incrimination.

In contrast, Defendants are charged with wire fraud, mail fraud, and securities fraud. The government is seeking to locate and prove that Defendants secreted over 1.4 million dollars each. The allegations in the indictments raise issues concerning Defendants' financial assets and liabilities, and Defendants' access to assets. Defendants' financial affidavits contain information regarding Defendants' financial status, which is directly relevant to the charges against

---

1. While the central issue in *Seattle Times* concerned the media's First Amendment right to have access to financial affidavits, *Id.* at 1514–18, the court also addressed the defendant's Fifth Amendment privilege against self-incrimination. *Id.* at 1518–19. The district court refused to unseal the affidavits on the ground that unsealing the affidavits would violate the defendant's Fifth Amendment rights. *Id.* at 1518. Applying the "real and appreciable" hazards standard to the issue of whether the defendant's Fifth Amendment right was violated, the Ninth Circuit reversed. *Id.* at 1518–19.

them. Thus, Defendants are faced with substantial and real hazards of incrimination should the Court unseal the financial affidavits.

The Court also finds the Second Circuit's decision in *Harris* unpersuasive. The Guide to Judiciary Policy and Procedure, which outlines the requirements for appointment or termination of counsel, states that, "[e]mployees of Law enforcement agencies or United States attorney offices should not participate in the completion of the CJA form 23 or seek to obtain information from a person requesting the appointment of counsel concerning his or her eligibility." Guide to Judiciary Policy and Procedure, Vol. VII, Ch. II, sec. A, 2.03(B).

Moreover, the Court notes that the Third, Fourth, Fifth, Eighth, and Tenth Circuits have resolved this issue in favor of providing the defendants with the protection sought. The Third, Fourth, Eighth, and Tenth Circuits have held that in order to protect defendants' Fifth Amendment privilege against self-incrimination, defendants' financial affidavits should be sealed and the hearing conducted *in camera. See United States v. Gravatt,* 868 F.2d 585, 590 (3rd Cir.1989); *United States v. Davis,* 958 F.2d 47, 49 n. 4 (4th Cir.1992); *United States v. Anderson,* 567 F.2d 839, 840 (8th Cir.1977); *United States v. Hardwell,* 80 F.3d 1471, 1483–84 (10th Cir.1996).

Finally, Judge Brennan initially reviewed Defendants' affidavits and determined that Defendants' financial information could implicate Defendants' Fifth Amendment right to be free from self-incrimination and ordered the affidavits sealed. The government has not presented any evidence which would lead the Court to question Judge Brennan's decision. The Court declines to review Judge Brennan's decision.

The government's motion to unseal Defendants' financial affidavits is, therefore, denied.

II. *Motion For An Order To Show Cause Why Counsel Should Not Be Terminated*

■ The government also seeks an order to show cause why appointment of counsel should not be terminated. In support of its motion, the government alleges that (1) Defendant Hickey continues to conduct a real estate brokerage business, John Hickey Brokerage, which has received over $184,000 in commissions over the last year; (2) Defendant Hickey received over $1.4 million from Continental Capital which remains unaccounted for; (3) Defendant Hickey obtained a cashier's check for $9,222 to pay Avis Rental for a car he allegedly stole from them; and (4) Defendant Hickey is currently driving a car which leases for $1,500 a month.

The government also alleges that (1) Defendant Tang received over 1.4 million from Continental Capital and has access to this money; (2) over $1 million has been deposited in a trust for Defendant Tang's two daughters; (3) Defendant Tang drives a Mercedes Benz (in her sister's name), owns a Jeep (which a friend drives), and leases a BMW in her daughter's name; (4) Defendant Tang lives in a penthouse in the Marina District and pays $2,200 per month; and (5) Defendant Tang is on the payroll of the Jewish Community Center and makes at least $5,000 per month in gross wages.

The Court has the power to review Defendants' financial status and determine whether Defendants are entitled to court appointed counsel. Under 18 U.S.C 3006A of the Criminal Justice Act at subsection (c), "if at any time after the appointment of counsel the United States magistrate or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate." Thus, the Court grants the government's motion for an order to show cause why appointment of counsel should not be terminated and orders a hearing to determine Defendants' current financial eligibility for court appointed counsel.

■ However, the Guide to Judiciary Policy and Procedure states that: "[e]mployees of Law enforcement agencies or United States attorney offices should not participate in the completion of the CJA form 23 or seek to obtain information from a person request-

# 1210

ing the appointment of counsel concerning his or her eligibility." Guide to Judiciary Policy and Procedure, Vol. VII, II, sec. A, 2.03(B). The government "may present to the court information concerning the person's eligibility, but the judicial inquiry into financial eligibility shall not be utilized as a forum to discover whether the person has assets subject to forfeiture, ... or other purposes not related to the appointment of counsel." 2.03(C).

The Ninth Circuit has not specifically set forth the procedures for conducting an inquiry into a defendant's ability to retain counsel without infringing upon the defendant's Fifth Amendment privilege. In *United States v. Ellsworth,* 547 F.2d 1096 (9th Cir.1976), however, the Ninth Circuit approved the district court's offer of an *ex parte, in camera* review of defendant's financial affidavit where the financial information in the affidavit was material to the charges. *Ellsworth,* 547 F.2d at 1098.

The Court also notes that several circuits have resolved the conflict between the Fifth Amendment rights of a defendant and the interests of the government in limiting court appointment of counsel to financially qualified individuals by requiring *in camera* review of a defendant's financial affidavit. *See United States v. Gravatt,* 868 F.2d 585, 590 (3rd Cir.1989) (holding that the trial court may resolve the conflict between the defendant's constitutional rights and the government's interests by reviewing *in camera* the financial disclosure and sealing the affidavit or by granting the defendant use immunity for the defendant's testimony); *United States v. Anderson,* 567 F.2d 839, 840 (8th Cir.1977) (holding that the trial court should have given the defendant the choice of an *in camera* review and sealing of the affidavit to prevent the accused from having to choose between her Fifth and Sixth Amendment rights); *United States v. Davis,* 958 F.2d 47, 49 n. 4 (4th Cir.1992) (holding that the district court avoided Fifth Amendment challenge by providing *ex parte* investigation of defendant's eligibility for counsel and sealing the records); *United States v. Hardwell,* 80 F.3d 1471, 1483–84 (10th Cir.1996) (holding that where allegations were connected to the

defendant's financial resources it was reversible error to permit the government to use the information contained in the financial affidavit).

Based on the authority cited above and the nature of the charges filed against Defendants, the Court finds that the financial information Defendants may provide at the hearing to determine why appointment of counsel should not be terminated, may be incriminating. Thus, the Court orders that any information provided by Defendants at the hearing shall be presented to the Court in an *in camera* proceeding.

## CONCLUSION

The government's motion to unseal Defendants' financial affidavits is hereby denied. The government's motion for an order to show cause why appointment of counsel should not be terminated is hereby granted. The hearing to show cause why appointment of counsel should not be terminated shall be held on March 26, 1998, at 2:00 p.m.

The government shall have an opportunity to present evidence concerning Defendants' current financial eligibility for court-appointed counsel. Defendants will have an opportunity to rebut the government's evidence in an *in camera* proceeding.

IT IS SO ORDERED